IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:16-CV-65-FL

DAVID FULTON BOWEN,      )
                          )
        Plaintiff,        )
                          )
    v.                    )          **MEMORANDUM**
                          )          **AND RECOMMENDATION**
NANCY A. BERRYHILL,[1]    )
Acting Commissioner of Social Security,  )
                          )
        Defendant.        )


In this action, plaintiff David Fulton Bowen ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled.[2] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 16, 18. Both filed memoranda in support of their respective motions. D.E. 17, 19. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 24 Aug. 2016 Text Ord. For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[2] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# I.  BACKGROUND

## A.  Case History

Plaintiff filed an application for DIB on 4 October 2012 and an application for SSI on 21 September 2012, alleging a disability onset date of 14 September 2012 in both.  Transcript of Proceedings ("Tr.") 20.  The applications were denied initially, on 26 February 2013 (Tr. 78, 89), and upon reconsideration, on 21 June 2013 (Tr. 101, 111), and a request for a hearing was timely filed.  Tr. 20.  On 20 November 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified.  Tr. 36-67.  The ALJ issued a decision denying plaintiff's claims on 6 February 2015.  Tr. 20-30.  Plaintiff timely requested review by the Appeals Council (Tr. 16).  On 9 December 2015, the Appeals Council admitted the following additional evidence submitted by plaintiff:  records from Ridgeview Counseling for the period 19 October 2012 to 23 February 2015 (Tr. 632-34); records from Fellowship Health Resources for the period 15 January 2013 to 9 April 2015 (Tr. 635-53); and a medical source statement by Joe Tooley, Ph.D. dated 11 April 2015 (Tr. 654-58).  Tr. 2, 5.  The Appeals Council denied admission of other records from Fellowship Health Resources that it deemed duplicates of records already in the administrative record.  *See* Tr. 2.  Notwithstanding admission of the additional evidence, the Appeals Council denied the request for review.  Tr. 1.

At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  On 9 February 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI).  *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

**B.      Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled."  At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt.

P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C. ALJ's Findings

Plaintiff was 32 years old on the alleged onset date of disability and 34 years old on the date of the hearing. *See, e.g.*, Tr. 29 ¶ 7. The ALJ found that plaintiff has at least a high school education (Tr. 29 ¶ 8) and past relevant work as a delivery driver, delicatessen clerk, and sandwich maker (Tr. 28 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

of alleged onset of disability. Tr. 22 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: asthma, obesity, a bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). Tr. 22 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 23-24 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of medium work:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)[6] with environmental and mental restrictions. The claimant can sit, stand, and walk for up to six hours in an eight-hour day. He can lift 50 pounds occasionally and can lift and carry 25 pounds frequently. He should not have concentrated exposure to pulmonary irritants. He can perform simple, routine, repetitive tasks ["SRRTs"]. He cannot perform production work. He can have occasional interaction with other people.

Tr. 24 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 28 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of store laborer, floor waxer, and coffee maker. Tr. 29-30 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 14 September 2012, through the date of the decision, 6 February 2015. Tr. 30 ¶ 11.

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "M-Medium Work," 1991 WL 688702. "Medium work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1

(W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be reversed and remanded for a new hearing on the grounds that the ALJ erred in (1) assessing plaintiff's credibility; (2) evaluating his mental impairments; and (3) handling the medical opinions of nonexamining state agency consultant Betty B. Aldridge, Psy.D. The court will address each contention in turn.

## IV. ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A. Applicable Legal Principles

The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* The ALJ's "'decision must contain specific reasons for the finding on credibility,

supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[7]

In assessing a claimant's credibility, the ALJ must consider "all of the available evidence." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The evidence that should be considered includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3).

"A party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

---

[7] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 6 February 2015.

**B.    Analysis**

Plaintiff testified that he believed he was disabled. *See* Tr. 25-26 ¶ 5. After summarizing at length plaintiff's testimony and reviewing much of the medical evidence, the ALJ determined at the first step of the credibility analysis that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 27 ¶ 5. However, at the second step the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 27 ¶ 5.

> The ALJ explained his credibility determination as follows:
>
> The claimant's asthma has been well-controlled with treatment and he has not had any acute asthmatic attacks. He does not have any signs of respiratory insufficiency. He does not have any functional limitations due to his obesity and this condition does not increase the restrictions he has from his other impairments. The claimant's mental disorders have been well-controlled with treatment. [Vijay Ghate, M.D. of Fellowship Health Resources] indicated that these mental disorders are in remission and the claimant concurred that he was doing very well.
>
> In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible.

Tr. 27 ¶ 5.

Invoking *Mascio*, plaintiff argues that the credibility findings by the ALJ preceding his explanation of his determination constitute "meaningless boilerplate" that has been criticized by the courts. Pl.'s Mem. 21. However, as noted by plaintiff himself, the boilerplate language in the instant case is different from that criticized in *Mascio*, which suggested that the credibility determination was based on the RFC determination. *See Mascio*, 780 F.3d at 639. Courts have allowed use of the boilerplate language used in this case where the ALJ sufficiently explains his

reasoning for the credibility determination. *See Sergent v. Colvin*, Civ. Act. No. 2:15-00352, 2016 WL 1241536, *11 (S.D.W. Va. 28 March 2016) (holding that the ALJ did not err by using boilerplate language where the ALJ gave sufficient reasons for her credibility determination); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, *6-7 (W.D.N.C. 17 July 2015) (holding that the ALJ did not err by using boilerplate language where the ALJ "properly considered all of the evidence of record"). Indeed, even *Mascio* held that reliance on impermissible boilerplate is not harmless if the ALJ otherwise properly analyzes the claimant's credibility. *See Mascio*, 780 F.3d at 639.

Plaintiff also contends that the ALJ erred by failing to identify the testimony he found not credible. Although not explicitly stated, it is apparent that the ALJ is referring to the bases upon which plaintiff alleges he is disabled, about which he testified at the hearing—namely, his asthma, back pain, obesity, and mental impairments. Tr. 49-53. Notably, the ALJ included these allegations by plaintiff in his summary of plaintiff's testimony. *See* Tr. 25-26 ¶ 5.

Plaintiff further argues that the ALJ's determination is not supported by substantial evidence. Again, the court disagrees.

As noted, the ALJ based his credibility determination, in part, on his findings that plaintiff's "asthma is well-controlled with treatment," "he has not had any acute asthmatic attacks," and "[h]e does not have any signs of respiratory insufficiency." Tr. 27 ¶ 5. The ALJ summarized the medical evidence regarding plaintiff's asthma as follows:

> The longitudinal medical record reveals that the claimant has been treated for asthma at Urban Ministries. He has been prescribed treatment with albuterol and advair. The claimant has not had frequent acute asthmatic attacks that required emergency medical treatment. His lungs have always been clear and he has not had signs of respiratory insufficiency such as cyanosis, clubbing, or use of the accessory muscles of respiration (Exhibits 9F and 11F).

Tr. 26 ¶ 5. This evidence constitutes substantial evidence supporting the ALJ's credibility determination regarding plaintiff's asthma.

Among other specific evidence, on 30 October 2013, plaintiff reported to his doctor that his asthma was well controlled. Tr. 576. On 30 July 2014, plaintiff's doctor noted that his asthma was under control with Advair. Tr. 599. Other than a few references to plaintiff's diagnosis of asthma (Tr. 572, 576, 600), there is no other evidence in the record regarding plaintiff's asthma. It is well settled that if a symptom can be reasonably controlled by treatment, including medication, it is not disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ, of course, also found that plaintiff's asthma is a severe impairment. But this finding does not conflict with his credibility determination regarding plaintiff's asthma. Rather, the severity finding has grounding in the ALJ's subsequent finding that plaintiff's "asthma and obesity would preclude him from performing heavy exertional activities but they are not of such severity as to prevent him from performing medium work." Tr. 28 ¶ 5. It is proper to read the ALJ's credibility determination and the other findings referenced together because an ALJ's decision should be read as a whole. *See, e.g.*, *Williams v. Colvin*, No. 4:13–CV–259–D, 2015 WL 631250, at *7 n.5 (E.D.N.C. 14 Jan. 2015), *rep. & rec. adopted*, 2015 WL 631250, at *2 (E.D.N.C. 12 Feb. 2015).

The ALJ did not expressly discuss plaintiff's back pain, but substantial evidence supports his obvious rejection of plaintiff's testimony that it significantly limits his ability to work. For example, plaintiff complained of back pain on 31 July 2013, but it was noted that he had a negative straight leg raising test and he had full range of motion. Tr. 577. On 2 October 2013, upon discharge from physical therapy, it was noted that plaintiff had full range of motion and

was not experiencing pain. Tr. 566. On 30 October 2013, at a follow-up visit for his back pain, plaintiff reported that he felt good, and his doctor noted that he had completed physical therapy and was free of back pain. Tr. 575. To the extent that the ALJ's not discussing plaintiff's back pain is deemed erroneous, plaintiff has not shown that the error was harmful given the paucity of evidence corroborating its alleged limiting effect.

With respect to plaintiff's obesity, the ALJ found, as noted, that plaintiff "does not have any functional limitations due to his obesity and [that] this condition does not increase the restrictions he has from his other impairments." Tr. 27 ¶ 5. This finding is, of course, qualified by the ALJ's finding that plaintiff's obesity is a severe impairment, ostensibly grounded in the further finding that plaintiff's obesity and asthma would preclude him from performing heavy exertional activities.[8] *See* Tr. 22 ¶ 3; 28 ¶ 5. In any event, although plaintiff contends that his obesity does have limiting effects greater than those acknowledged by the ALJ, he cites no evidence supporting this contention beyond his own testimony. The evidence previously discussed that plaintiff's asthma and back pain are not as limiting as plaintiff alleges also supports the ALJ's determination regarding the absence of an effect of plaintiff's obesity on these impairments.

As to plaintiff's mental impairments, the ALJ found in his credibility determination, as noted, that plaintiff's "mental disorders have also been well-controlled with treatment" and that Dr. Ghate "indicated that these mental disorders are in remission and the claimant concurred that he was doing very well." Tr. 27 ¶ 5.

The ALJ summarized the evidence regarding plaintiff's mental impairments as follows:

The claimant's school records reveal that he was diagnosed with a learning disability when he was 10 years of age. He received special education services in

---

[8] To the extent that the ALJ's credibility finding regarding obesity is deemed erroneously inconsistent with his severity and exertional findings, the error is harmless in light of the paucity of evidence regarding the obesity.

the category of specific learning disability. He was able to graduate high school (Exhibit 6E).

The medical record further reveals that the claimant has also been treated for a bipolar disorder and [ADHD]. He was treated at Carolina Behavioral Care in 2009 but he was discharged from there for failing to keep appointments. He returned there for treatment in February 2011 following a domestic violence incident. He said he had tried several other mental health agencies in the intervening period. He gave a history of marijuana and cocaine abuse. He was diagnosed with a bipolar disorder, depressed type, and a borderline personality disorder. The claimant was also seen at the Triumph mental health agency at this same time, where he was diagnosed with a bipolar disorder, polysubstance dependence, and a borderline personality disorder. The claimant was treated at Carolina Behavioral Care through May 2012. He was treated at the Triumph agency through October 2012. He was prescribed treatment with buspar, lamictal, klonopin, abilify, trazadone, and ritalin (Exhibits 2F-3F).

The claimant has been treated by Joe Tooley, Ph.D., of Ridgeview Counseling Associates, since 1995. He has diagnosed the claimant with a bipolar disorder. Dr. Tooley's treatment notes are very difficult to decipher and essentially illegible (Exhibits 4F and 10F).

The claimant began to receive mental health treatment at Fellowship Health Resources in April 2013. He was seen there for intake on April 4, 2013, by Vijay Ghate, M.D. It was noted that the claimant had previously been stabilized on the combination of medications prescribed at Carolina Behavioral Care and at Triumph. Dr. Ghate diagnosed the claimant with a bipolar disorder, mixed type, in remission. He subsequently also diagnosed the claimant with ADHD, in remission. Dr. Ghate's notes, through October 2014, reveal that the claimant reported he was doing very well. His mental status findings were normal (Exhibits 5F-6F, and 13F).

Tr. 26-27 ¶ 5. The evidence cited constitutes substantial evidence supporting the ALJ's determination that plaintiff's allegations regarding his mental impairments are not fully credible.

The final basis the ALJ gave for his credibility determination was, of course, that the medical evidence and his own observations at the hearing did not reveal evidence of a change in body habitus or constitutional appearance "which might be expected in a person whose activities are markedly restricted due to a debilitating disease process." Tr. 27 ¶ 5. The record does, in fact, appear to be bereft of the type of evidence to which the ALJ refers. Plaintiff has not

identified any. This final portion of the ALJ's credibility determination is therefore supported by substantial evidence.

Plaintiff also alleges that the ALJ did not give legally sufficient reasons for his credibility determination. The ALJ, though, focuses primarily on inconsistency of plaintiff's allegations of disabling limitations with the medical evidence. This is clearly a proper basis for discrediting a claimant's credibility. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

The ALJ's reliance on his own observation of plaintiff was also proper. Tr. 27 ¶ 5. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). Moreover, courts have generally held that there was no error where ALJ's have made the same finding. *See Wells v. Colvin*, No. 4:15-CV-105-D, 2016 WL 3627322, at *4 (E.D.N.C. 1 June 2016) (holding that the ALJ did not err in his credibility determination), *mem & rec. adopted*, 2016 WL 3640615 (E.D.N.C. 29 June 2016); *Lucas v. Colvin*, No. 5:13-CV-742-FL, 2014 WL 6666772, *7 (E.D.N.C. 24 Nov. 2014) (holding that the ALJ did not err in the credibility determination), *mem. & rec. adopted*, 2014 WL 6666772 (E.D.N.C. 24 Nov. 2014); *Lyons v. Astrue*, No. 4:11-CV-117-FL, 2012 WL 1642417, *4-6 (E.D.N.C. 13 Apr. 2012) (holding that the ALJ did not err in the credibility determination), *mem. & rec. adopted*, 2012 WL 1642311 (E.D.N.C. 10 May 2012).

Even if the ALJ's finding based on his observation of plaintiff were deemed erroneous, the ALJ's other reasons for his credibility determination provide a sufficient basis for his determination. The court concludes that the ALJ's credibility determination was proper.

## V.    ALJ'S ASSESSMENT OF PLAINTIFF'S MENTAL IMPAIRMENTS

### A.    Applicable Legal Principles

In determining a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." *Id.*, 1996 WL 374184, at *1. However, the Fourth Circuit has declined to adopt a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. *Mascio*, 780 F.3d at 636. Rather, "'remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly conducted analysis by a state agency consultant. *See*, *e.g.*, *Linares*, 2015 WL 4389533, at *3 ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96–8p." (citing *Lemken v. Astrue*, No. 5:07–CV–33–RLV–DCK, 2010 WL 5057130, at *8 (W.D.N.C. 26 July 2010))).

Concentration, persistence, or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listing 12.00C3. It is one of four broad functional areas assessed using the special technique for mental impairments under the Regulations. *See* 20 C.F.R. §§ 404.1520a, 416.920a. *Mascio* instructs that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical

question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court reasoned:

> [T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

*Id.* The court recognized that a claimant's limitation in concentration, persistence, or pace may not translate into a limitation in the RFC, but held that the ALJ must explain if that is the case. *Id.* In the absence of such an explanation, remand is in order. *Id.*; *see also, e.g., Herren v. Colvin*, No. 1:15-cv-00002-MOC, 2015 WL 5725903, at *5-7 (W.D.N.C. 20 Sept. 2015).

## B. Analysis

At step three of the sequential analysis, applying the special technique for mental impairments, the ALJ found that plaintiff had mild difficulty maintaining social functioning and moderate difficulty maintaining concentration, persistence, or pace. Tr. 23 ¶ 4. The ALJ went on in his RFC determination to limit plaintiff to SRRTs; nonproduction work; and "occasional interaction with other people."[9] Tr. 24 ¶ 4.

Plaintiff argues that the ALJ erred by not performing a proper function-by-function analysis of plaintiff's mental impairments. The court disagrees.

One error plaintiff alleges is the ALJ's not defining the term "interaction" as used in his RFC determination. The contention is meritless.

The Regulations define "social functioning" as used in the special review technique for mental impairments, in relevant part, as follows: "Social functioning in work situations may involve interactions with the *public*, responding appropriately to persons in authority (e.g.,

---

[9] An ALJ's determination that a claimant's limitation in social functioning is mild generally equates to a determination that the limitation is not severe and therefore does not have more than a minimal effect on his ability to work. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Since the ALJ included accommodations in his RFC determination responsive to this limitation, the ALJ obviously determined that plaintiff's impairment in social functioning did have more than a minimal effect on plaintiff's ability to perform work activities.

*supervisors*), or cooperative behaviors involving *coworkers*." Listing 12.00C2 (emphasis added). Consistent with this definition, in his hypothetical to the vocational expert the ALJ described the social interaction limitation by stating that "we need a job with only occasional interaction with other people, such as *coworkers*, *supervisors*, or the *public*." Tr. 63 (emphasis added). Thus, taken together, the definition of social functioning and the ALJ's description of the "occasional interaction" limitation to the vocational expert signify that "interaction" as used in his RFC determination included plaintiff's interacting with the public, responding to supervisors, and cooperating with coworkers.

Contrary to plaintiff's contention, the court does not find the term "interaction" as used by the ALJ to otherwise be ambiguous. In the context presented, its commonsense meaning is to speak or participate in other work-related activities mutually with other people. *See* Merriam-Webster Online Dictionary, entry for "interaction," www.merriam-webster.com/dictionary/interaction (last visited 22 Feb. 2017) (defining "interaction" as "mutual or reciprocal action or influence"). Notably, the vocational expert did not find the term ambiguous, seeking no clarification of it before identifying occupations available to plaintiff based on the hypothetical. Tr. 63. Plaintiff has failed to identify any activities that he contends the ALJ did not expressly include in "interaction" to his prejudice.

Substantial evidence supports the ALJ's assessment of plaintiff's impairment in social functioning. The ALJ points to the following evidence in support of his determination that plaintiff's social functioning limitation is mild:

> He is able to interact appropriately with family, friends, and his medical treatment sources. He generally appears to be pleasant and cooperative at examinations. He interacts with his roommate and mother regularly and he sees his daughter on weekends.

Tr. 23 ¶ 4.

Additional supporting evidence includes the records of Dr. Ghate of Fellowship Health Resources from April 2013 to October 2014. Tr. 615-20, 644-50. As the ALJ noted, they indicate that plaintiff "reported that he was doing very well" and that his "mental status findings were normal." Tr. 27 ¶ 5. In addition, Dr. Aldridge found, as recited by the ALJ, that plaintiff "could perform the mental demands of a wide range of unskilled work with limited social interaction." Tr. 28 ¶ 5 (referencing Tr. 76, 87).

As to plaintiff's limitation in maintaining concentration, persistence, or pace, and specifically the ability to stay on task, plaintiff argues that the ALJ did not adequately account for it in the RFC by limiting plaintiff to SRRTs. The ALJ thereby purportedly violated the precept in *Mascio* that a limitation to SRRTs does not account for a limitation in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638.

As noted, however, the ALJ did not limit plaintiff to simply SRRTs. He also provided that plaintiff have no production work and only occasional interaction with other people. These limitations clearly bear on a person's ability to stay on task. The press of production work taxes the ability to concentrate and stay focused. Similarly, interaction with other people can be a distraction from staying on task. A limitation to SRRTs, while not alone accommodating a limitation to concentration, persistence, or pace, tends to lessen the burden on a person's capacity to maintain concentration, persistence, or pace. Common experience teaches that it takes less attention and concentration to stay on task when performing simple tasks, as opposed to more complicated ones. This court and others have recognized that limitations relating directly to attention and concentration together with a limitation to SRRTs are sufficient to account for a claimant's moderate difficulty with attention and concentration in accordance with *Mascio*. *See Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. 8 Sept. 2015)

(limitation to "[SRRTs] with only occasional contact with the general public in an environment with few workplace changes . . . sufficiently accounted for [claimant's] difficulties with concentration and persistence" (internal quotation marks omitted)); *Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, at *3 (E.D.N.C. 19 Aug. 2015) (ALJ accounted for claimant's difficulty with persistence and concentration through limitations to "no constant change" and "no loud noises," respectively, in addition to limiting claimant to no complex decision making); *Linares*, 2015 WL 4389533, at *4 (ALJ "accounted for [claimant's] moderate limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact" while also including a limitation to SRRTs).

Substantial evidence supports the sufficiency of the limitations relating to SRRTs, nonproduction work, and social interaction to address plaintiff's deficiencies in concentration, persistence, or pace. This includes the evidence the ALJ cited in his explanation that plaintiff's limitations in concentration, persistence, or pace are moderate:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. He has some problems with focus related to his ADHD, but he is able to complete tasks in a timely manner. He was able to complete high school. He is able to manage his medical appointments and his medications independently.

Tr. 23 ¶ 5. Additional supporting evidence includes the records of Dr. Ghate indicating that plaintiff "reported that he was doing very well" and that his "mental status findings were normal." Tr. 27 ¶ 5. There is also the opinion of Dr. Aldridge that plaintiff was "capable of completing tasks within a reasonable time frame." Tr. 75.

For the reasons set forth above, as well as for the reasons discussed in the next section below, including the ALJ's adoption of Dr. Aldridge's RFC assessment, the court concludes that the ALJ performed an adequate function-by-function analysis in determining plaintiff's RFC. The court accordingly rejects this challenge to the ALJ's decision.

## VI.     ALJ'S HANDLING OF DR. ALDRIDGE'S OPINIONS

### A.     Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e); 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & rec. adopted*, 2015 WL 1810173, at *1 (W.D. Va. 21 Apr. 2015); *Napier*, 2013 WL 1856469, at *2. More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and

psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

### B.  Analysis

On 26 February 2013, Dr. Aldridge completed a mental RFC assessment at the initial level of review of plaintiff's applications. Tr. 74-76, 85-87.

In the area of social functioning, Dr. Aldridge found that plaintiff was moderately limited in his abilities "to interact appropriately with the general public" and "to accept instructions and respond appropriately to criticisms from supervisors," and not significantly limited in his abilities "to ask simple questions or request assistance," "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Tr. 75, 86. Dr. Aldridge then explained in conclusion her ratings of plaintiff's social functioning by stating that "[claimant] is capable of interacting appropriately with others." Tr. 75, 86.

In addition, in the area of adaptation, Dr. Aldridge found that plaintiff was moderately limited in the ability "to respond appropriately to changes in the work setting," but not significantly limited in the abilities "to be aware of normal hazards and take appropriate precautions," "to travel in unfamiliar places or use public transportation," and "to set realistic goals or make plans independently of others." Tr. 76, 87. Dr. Aldridge then explained in conclusion her ratings regarding plaintiff's adaptive ability by stating that "[claimant] does appear to be capable of handling routine stress and change." Tr. 76, 87. Dr. Aldridge also rated plaintiff in the area of understanding and memory. *See* Tr. 74, 85.

Lastly, Dr. Aldridge provided an overall determination of plaintiff's mental RFC based on her assessment of plaintiff's abilities in the various specific functional areas:

> Totality of evidence supports [claimant] with MDI [*i.e.*, medically determinable impairments] that could reasonably cause some functional impairment, however, symptom severity does not rise to level to preclude SRRTs. The [claimant] appears to retain the mental capacity for the sustained performance of relatively simple routine repetitive tasks in relatively undemanding work settings that do not require intensive interpersonal relating and that require no more than two hours at the time of maintenance of attention and concentration.[10]

Tr. 76, 87.

The ALJ summarized Dr. Aldridge's opinions and stated his evaluation of them as follows:

> At the initial level, Dr. Betty Aldridge found that the claimant could perform the mental demands of a wide range of unskilled work with limited social interaction (Exhibit 1A-2A). At the reconsideration level, Dr. Jennifer Fulmer found that there was insufficient evidence upon which to evaluate the severity of the claimant's condition due to his failure to attend a consultative examination (Exhibits 5A-6A). Significant additional evidence submitted in conjunction with the claimant's request for a hearing reduces the comparable weight to be afforded Dr. Fulmer's opinion. That the additional evidence is consistent with Dr.

[10] The requirement of no more than two hours of maintenance of attention and concentration at a time is the equivalent of a normal work schedule, providing for a morning break, lunch period, and an afternoon break. *See, e.g., Puryear v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-15-3386, 2016 WL 4444660, at *3, n.2 (D. Md. 23 Aug. 2016) (citing Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *6 (2 July 1996)).

Aldridge's opinion, indicating that it is still an appropriate assessment of the claimant's mental functional abilities.

Tr. 28 ¶ 5.

Plaintiff suggests that the ALJ erred by failing to specify more clearly the weight he gave Dr. Aldridge's opinions. It is evident, though, from what the ALJ did say, that he was essentially adopting Dr. Aldridge's assessment of plaintiff's mental impairments. Moreover, by stating that Dr. Aldridge's opinions were "still an appropriate assessment," he explained that he deemed them accurate when made through the issuance of his decision. He cited consistency with evidence submitted by plaintiff in conjunction with his hearing request (*i.e.*, after completion of the reconsideration level of review) as showing their continued validity. Consistency with the evidence of record is, of course, a factor properly considered in evaluating medical source opinions. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The evidence plaintiff submitted in conjunction with his hearing request that supports Dr. Aldridge's assessment includes treatment records from Fellowship Health Resources, where plaintiff began treatment in April 2013.[11] The ALJ summarized this evidence as follows:

> The claimant began to receive mental health treatment at Fellowship Health Resources in April 2013. He was seen there for intake on April 4, 2013, by Vijay Ghate, M.D. It was noted that the claimant had previously been stabilized on the combination of medications prescribed at Carolina Behavioral Care and at Triumph. Dr. Ghate diagnosed the claimant with a bipolar disorder, mixed type, in remission. He subsequently also diagnosed the claimant with ADHD, in remission. Dr. Ghate's treatment notes, through October 2014, reveal that the claimant reported that he was doing very well. His mental status findings were normal (Exhibits 5F-6F, and 13F).

Tr. 27 ¶ 5.

---

[11] Plaintiff submitted some records from Fellowship Health Resources at the reconsideration level of review, which was completed on 21 June 2013 (*see* Tr. 93, 101, 103, 111), but most of plaintiff's treatment relationship with Fellowship Health Resources and the corresponding records before the ALJ came after the reconsideration level (*see* Tr. 615-20).

Case 5:16-cv-00065-FL   Document 20   Filed 02/22/17   Page 24 of 28

Plaintiff also contends that the ALJ erred by not discussing various specific functions Dr. Aldridge rated as part of her mental RFC assessment. These functions are, in the area of social functioning, plaintiff's ability to accept instructions and respond appropriately to supervision, and to get along with coworkers (Tr. 75, 86) and, in the area of adaptation, the ability to respond appropriately to changes in the work setting (Tr. 76, 87). But the ALJ did effectively address these functions. He did so by adopting Dr. Aldridge's assessment of them. *See*, *e.g.*, *Linares*, 2015 WL 4389533, at *3.

Moreover, the ALJ was adopting not only the ratings by Dr. Aldridge as to these specific functions, but also her subsequent analysis of them, culminating in her overall mental RFC determination. In complaining of the ALJ's failure to discuss the various ratings, plaintiff largely ignores this subsequent analysis by Dr. Aldridge and thereby understates the degree to which the ALJ explained, through adoption of Dr. Aldridge's assessment, the functional effects of plaintiff's mental impairments and the responsive limitations the ALJ included in his RFC determination. Again, such reliance by an ALJ on the opinions of a medical source is proper. *See*, *e.g.*, *Linares*, 2015 WL 4389533, at *3.

Plaintiff argues that Dr. Aldridge's finding that plaintiff is moderately limited with respect to dealing with supervisors conflicts with her explanatory finding that plaintiff can interact appropriately with others. However, this finding—which is not restricted to the ability to deal with supervisors—simply affirms that plaintiff has an ability to interact appropriately with others, that is, that he is not devoid of that ability entirely. In her overall RFC determination, Dr. Aldridge accommodates plaintiff's social interaction limitations by restricting him to work settings "that do not require intensive interpersonal relating" in combination with the restrictions to SRRTs and relatively undemanding work settings. Tr. 76, 87.

Plaintiff also alleges a contradiction between Dr. Aldridge's finding that plaintiff was moderately limited in the ability to adapt to workplace changes and the purported noninclusion in her overall RFC determination of an express restriction on adaptation. But the restrictions to SRRTs and "relatively undemanding work settings," in combination with the restriction on social interaction, in Dr. Aldridge's overall RFC determination do address the limitation in adaptive ability she found plaintiff to have. Routine work by definition involves limited, routine changes.

Plaintiff also disputes that the ALJ accommodated the limitations in the ability to deal with supervisors and to adapt to workplace changes Dr. Aldridge found plaintiff to have. Again, the contention is meritless.

The ALJ's limitation of plaintiff to only occasional interaction with other people is obviously responsive to Dr. Aldridge's finding that plaintiff was moderately limited in the ability to deal with supervisors. As discussed, this limitation by the ALJ encompasses interaction with supervisors. Further, this limitation tracks the corresponding limitation in Dr. Aldridge's overall RFC determination restricting plaintiff to work settings that do not require "intensive interpersonal relating." Tr. 76, 87. The same rationale that supports Dr. Aldridge's limitation supports the ALJ's limitation.

The ALJ's limitation of plaintiff to SRRTs, in combination with the limitations to nonproduction work and occasional interaction with other people, addresses Dr. Aldridge's findings that plaintiff was limited in the ability to respond appropriately to changes in the work setting, but capable of handling routine stress and change. These limitations by the ALJ track the corresponding limitations in Dr. Aldridge's overall RFC determination—namely, to SRRTs, relatively undemanding work settings, and no intensive interpersonal relating. The same rationale that supports Dr. Aldridge's limitations supports the ALJ's limitations.

In his argument, plaintiff refers to instructions and forms in the Program Operations Manual System ("POMS"), specifically POMS DI 25020.010. Soc. Sec. Admin., POMS, DI 25020.010 Mental Limitations, https://secure.ssa.gov/poms.NSF/lnx/0425020010 (last visited 22 Feb. 2017). Plaintiff asserts that, pursuant to POMS DI 25020.010, an ALJ must consider the narrative in the form completed by state agency consultants. However, POMS DI 25020.010B1 refers to a different form than that completed by Dr. Aldridge and is not relevant to the above discussion.

The court concludes that plaintiff's challenge to the ALJ's handling of Dr. Aldridge's opinions is meritless. The court accordingly rejects it.

## VII. CONCLUSION

For the foregoing reasons, based on its consideration of the record as supplemented by the additional evidence admitted by the Appeals Council, the court concludes that the Commissioner's decision is supported by substantial evidence of record and contains no reversible error. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 18) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 16) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 8 March 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 22nd day of February 2017.

James E. Gates
United States Magistrate Judge